IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION


| | | |
|---|---|---|
| AMANDA SCHOENFELD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-4368-CV-C-NKL |
| | ) | |
| U.S. RESORT MANAGEMENT, INC., | ) | |
| and STRATEGIC OUTSOURCING, INC., | ) | |
| | ) | |
| Defendants. | ) | |


## ORDER

Plaintiff Amanda Schoenfeld, under 9 U.S.C. § 10 and § 12, moves to vacate an arbitrator's July 5, 2007 award in favor of Defendant U.S. Resort Management, Inc. (U.S. Resort) [Doc. # 139]. U.S. Resort moves to confirm an arbitrator's judgment under 9 U.S.C. § 9 [Doc. # 123], and also moves to confirm the arbitrator's amended award including $3,485.65 in costs [Doc. # 138]. This Court now denies Schoenfeld's motion to vacate and grants U.S. Resort's motions to confirm.

## I.     Arbitrator's Summary Judgment Opinion

After stating the appropriate summary judgment standard outlined in *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242 (1986), the arbitrator granted summary judgment as to all of Schoenfeld's claims: (1) hostile work environment; (2) gender discrimination; and (3) retaliation. *See* Arb. Op. at 2.

1

## A. Hostile Work Environment

The arbitrator noted that to establish a hostile work environment, a claimant must show that: (1) she was a member of a protected group; (2) she was subjected to unwelcome harassment in the workplace; (3) the harassment was based on sex; (4) the harassment affected a term, condition or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt and effective remedial action.  *See* Arb. Op. at 2 (citing *Gilooly v. Mo. Dep't of Health & Senior Servs.*, 421 F.3d 734 (8th Cir. 2005); *Tuggle v. Mangan*, 348 F.3d 714 (8th Cir. 2003)).  The arbitrator held that Schoenfeld failed to establish the fourth element because she did not show that the conduct was pervasive.  Arb. Op. at 2-3.  "To clear the high threshold of actionable harm, the Claimant has to show that the workplace is permeated with discriminatory intimidation, ridicule and insult."  Arb. Op. at 3 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993); *Gilooly*, 421 F.3d 734; *Alagna v. Smithville R-II Sch. Dist.*, 324 F.3d 975 (8th Cir. 2003); *Duncan v. Gen. Motors Corp.*, 300 F.3d 928 (8th Cir. 2002); *Scusa v. Nestle U.S.A. Co.*, 181 F.3d 958 (8th Cir. 1999)).

Viewing the evidence in the light most favorable to Schoenfeld, the arbitrator noted the following:

> 1.      After working approximately 3 ½ months as a dispatcher, Claimant applied for a job as a road officer when the position became available. Claimant advised her immediate supervisor, Roger Strope, that she was interested in the position and wanted to become a road officer and that Strope immediately said no because women do not make good road officers.  Strope later indicated that women in the past have not been able to do the job and that Strope advised Claimant that he had already planned on hiring a male.

Case 2:05-cv-04368-NKL   Document 147   Filed 01/03/08   Page 2 of 21

Additionally, Strope indicated the Claimant would have to climb up and down a hill as a type of physical fitness test that was not required of male applicants for this position.

2.     Claimant did receive the job as a road officer, but after she was given the position Strope told her that if you mess up just once I will fire your ass.

3.     Approximately one month after she began as a road officer she was in the security office.  Claimant went into the restroom and when she came out she stated "I can't wait to get home to get these pants off because they are too tight."  In response to this comment Strope stated, "Well, if your ass wasn't so big, you wouldn't have that problem."

4.     Claimant told fellow road officer, Chris English, about an off-duty wrestling match between Claimant and a male member of the local sheriff's department.  Claimant told English that her wrestling opponent "loves to wrestle people."  English replied, "I bet he does" and laughed.  Claimant asked "What's so funny?"  English responded, "Loves to wrestle, huh?"  Claimant interpreted this exchange as though English was accusing her of wrestling with the sheriff's department employee in bed under the sheets.

5.     On another occasion, Claimant and other employees were assembled for a meeting at the security office when she and another employee were picking on each other.  Claimant's step-grandfather, another road officer, commented that she and the other employee were acting like brother and sister.  Claimant and the other two employees started laughing at which time Strope stated "Well they can't be brother and sister.  She's pregnant with his baby.  That is why she's been sick the past few days."

6.     There was a picture incident in the workplace where one employee's personal pictures were removed from her workplace and hidden by another employee, Paul Wood.  Claimant was disciplined for her role and statements made during the investigation of who removed the pictures and where the pictures were located even though Wood, who had removed the pictures, received no discipline.

7.     There are two additional incidents that appear in the record for the first time in Claimant's affidavit included in her Suggestions in Opposition to the Motion for Summary Judgment.  There had been plenty of opportunity both in the administrative process and in the discovery phase of this proceeding for these additional facts to have been disclosed.  A tribunal should not look

favorably on newly presented evidence presented after the close of discovery that is presented in an effort to defeat a motion for summary judgment. However, for purposes of analyzing Claimant's sexual discrimination claim under the hostile work environment theory the following additional facts are considered:

> A.   On another occasion, while Claimant was sitting at a computer at the dispatch desk, English came up behind her and started rubbing her shoulders.  Claimant complained to Strope about the shoulder rubbing incident.  He said that he would take care of it, but nothing ever happened.

> B.   On another occasion, Strope made a sexual comment over the radio that was heard by anyone monitoring the radio's frequency. Strope told Claimant that the computers were being fixed, but that he could not tell her who was doing the work because it would make her "teeth sweat."

Arb. Op. at 3-5.  The arbitrator held this was insufficient evidence as a matter of law to show a hostile work environment.  "Case history would suggest that more egregious misconduct than what Claimant experienced in this case did not constitute sexual harassment."  Arb. Op. at 5 (citing *Vajdl v. Mesabi Acad. of KidsPeace, Inc.*, 484 F.3d 546 (8th Cir. 2007); *Tuggle*, 348 F.3d 714; *Duncan*, 300 F.3d 928; *Scusa*, 181 F.3d 958; *Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 737 F. Supp. 1070 (E.D. Mo. 1990)).  "While Claimant was subjected to conduct that was chauvinistic, boorish, immature and inappropriate, it is not the type of conduct that satisfies the standard to establish a hostile work environment."  Arb. Op. at 6.

## B.   Gender Discrimination

Next, the arbitrator analyzed Schoenfeld's gender discrimination claim under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  He held Schoenfeld failed to establish a prima facie case because she did not present evidence that she was treated

4

differently from similarly situated male employees. *See* Arb. Op. at 6. "To meet the fourth element in a disparate treatment claim, the Claimant must show that other employees outside of the protected group were allegedly treated more favorably and were similarly situated in all relevant aspects." Arb. Op. at 6-7 (citing *Wells v. SCI Mgmt., L.P.*, 469 F.3d 697 (8th Cir. 2006); *Gilooly*, 421 F.3d 734). The arbitrator explained:

> There is virtually no evidence presented comparing Claimant to any other employee. Looking at the evidence in the light most favorable to Claimant, the evidence attempts to make a comparison between Claimant and employee, Paul Wood. However, the evidence fails to establish whether or not the degrees of misconduct by Wood and Claimant related to the picture incident were the same in all relevant respects.

Arb. Op. at 7. The arbitrator noted that, even if Schoenfeld had established a prima facie case, U.S. Resort still proffered a legitimate, nondiscriminatory reason for her termination. *See* Arb. Op. at 7.

## C. Retaliation

The arbitrator stated that to prove a retaliation claim, Schoenfeld was required to show (1) that she engaged in statutorily protected activity; (2) that U.S. Resort subsequently took an adverse employment action against her; and (3) the adverse employment action was causally connected to her protected activity. *See* Arb. Op. at 8 (citing *Gilooly*, 421 F.3d 734; *Rheineck v. Hutchinson Tech., Inc.*, 261 F.3d 751 (8th Cir. 2001); *Scusa*, 181 F.3d 958). The arbitrator first held Schoenfeld failed to establish she was engaged in a statutorily protected activity. "Claimant admits that following the picture incident when she initially received discipline in the form of loss of holiday pay for two days, a suspended two week layoff, and

5

a 90-day probationary period which was subsequently withdrawn and Claimant was terminated, she did not initially claim that said action was taken based on gender discrimination or sexual harassment." Arb. Op. at 9. Moreover, Schoenfeld could not claim that U.S. Resort retaliated against her for her complaints of sexual harassment and gender discrimination prior to the picture incident because "these were not proximate in time to the adverse employment action" and, thus, there was no causal connection. Arb. Op. at 9. Finally, the arbitrator held that U.S. Resort had put forth a legitimate, nonretaliatory reason for her termination, "based upon Claimant's actions during the investigation into the picture incident." Arb. Op. at 9. "Claimant has failed to come forward with sufficient evidence that said reasons were only a pretext covering up discriminatory acts by the Respondent as discussed above." Arb. Op. at 9.

## II. Discussion

### A. Schoenfeld's Motion to Vacate

#### 1. Standard of Review.

Most of the procedural background of this case is discussed in the Court's October 4, 2007 Order. *See Schoenfeld v. U.S. Resort Mgmt., Inc.*, No. 05-4368, 2007 WL 2908622, at *1 (W.D. Mo. Oct. 4, 2007). Schoenfeld argues the arbitrator's order should be vacated because he manifestly disregarded the law applicable to summary judgment and her claims. "[B]eyond the grounds for vacation provided in the FAA, an award will only be set aside where it is completely irrational or evidences a manifest disregard for the law." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001) (quoting *Val-U Constr. Co. of S.D. v. Rosebud*

6

*Sioux Tribe*, 146 F.3d 573, 578 (8th Cir. 1998)). The "manifest disregard for the law" exception is extremely narrow: It "requires proof 'that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it.'" *MX, Inc. v. Zotec Solutions, Inc.*, 163 Fed. App'x 446, 447 (8th Cir. 2006) (citing *Stark v. Sandberg, Phoenix, & von Gontard, P.C.*, 381 F.3d 793, 802 (8th Cir. 2004)); *see also Lincoln Nat'l Life Ins. Co. v. Payne*, 374 F.3d 672, 675 (8th Cir. 2004) ("If an arbitrator, for example, stated the law, acknowledged that he was rendering a decision contrary to law, and said he was doing so because he thought the law unfair, that would be an instance of 'manifest disregard.'"). A manifest disregard of the law "clearly means more than error or misunderstanding with respect to the law." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2d 930, 933 (2d Cir. 1986) (cited with approval by *Marshall v. Green Giant Co.*, 942 F.2d 539, 550 (8th Cir. 1991)). This exception is a "doctrine of last resort" to be applied only in "those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent, but where none of the provisions of the FAA apply." *MX, Inc.*, 163 Fed. App'x at 447 (quoting *St. John's Mercy Med. Ctr. v. Delfino*, 414 F.3d 882, 884 & n.1 (8th Cir. 2005)).

In the summary judgment context, although an arbitrator may show manifest disregard where he recognizes, but ignores, overwhelming evidence, *see, e.g., Neary v. Prudential Insurance Co. of America*, 63 F. Supp. 2d 208, 210 (D. Conn. 1999), this must still be balanced against the judiciary's extremely limited review of arbitration awards and the FAA's "liberal policy favoring arbitration agreements." *Lenz v. Yellow Transp., Inc.*, 431

F.3d 348, 351 (8th Cir. 2005); *see also Kiernan v. Piper Jaffray Cos.*, 137 F.3d 588, 594 (8th Cir. 1998). Thus, a court must be careful when reviewing an arbitrator's summary judgment for manifest disregard of the law, limiting vacatur to primarily those situations where the arbitrator was aware of the law, but refused to apply it; misapplication or misunderstanding of the law is not enough. Otherwise, the court risks engaging in the very judicial review of arbitration awards—in the case of summary judgments, de novo review—that the FAA and the courts have prohibited. *Compare Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 269 (7th Cir. 2006) ("It is tempting to think that courts are engaged in judicial review of arbitration awards under the Federal Arbitration Act, but they are not."), *with Weger v. City of Ladue*, 500 F.3d 710, 718 (8th Cir. 2007) (reviewing de novo district court's grant of summary judgment).

Schoenfeld's main contention is that, in considering summary judgment on her retaliation and gender discrimination claims,[1] the arbitrator did not view the evidence in the light most favorable to her, the nonmovant. However, in his factual statement, the arbitrator expressly stated he was viewing the evidence in the light most favorable to Schoenfeld. In addition, even if the arbitrator made erroneous legal conclusions or misapplied the law, it does not mean he showed manifest disregard of the law. *See Stark*, 381 F.3d at 802 ("Manifest disregard of the law 'is more than a simple error in law or a failure by the arbitrators to understand or apply it."); *see also Lincoln Nat'l Life Ins. Co.*, 374 F.3d at 675

---

[1]Schoenfeld does not challenge the arbitrator's decision regarding her hostile work environment claim.

Case 2:05-cv-04368-NKL   Document 147   Filed 01/03/08   Page 8 of 21

("Plaintiffs also argue that the arbitrators misapplied the law, but these purported errors of law are not reviewable."). Thus, this Court cannot set aside an award even where an arbitrator erred in his legal analysis. *See Schoch v. InfoUSA, Inc.*, 341 F.3d 785, 790 (8th Cir. 2003) (citing *UHC Mgmt. Co. v. Computer Scis. Corp.*, 148 F.3d 992, 998 (8th Cir. 1998)).

        2.     *Retaliation Claim*.

The arbitrator found that Schoenfeld was not engaged in a statutorily protected activity when she was involved in an incident where a male employee removed and hid another employee's personal pictures. *See Weger*, 500 F.3d at 726 (outlining elements of prima facie retaliation case). Further, the arbitrator found that, even considering Schoenfeld's complaints to U.S. Resort regarding sexual harassment and gender discrimination made prior to the picture incident as fulfilling the protected activity prong, Schoenfeld still could not show the termination was causally linked to protected conduct because the complaints were not proximate in time to her termination. *See id.*; *see also Kipp v. Mo. Highway & Transp. Comm'n*, 280 F.3d 893, 897 (8th Cir. 2002) ("But we believe . . . that what is meant by 'causal link' in the present context is a showing that an employer's 'retaliatory motive played a part in the adverse employment action,' . . . ." (citations omitted)). These complaints, the arbitrator explained, happened before the "picture incident" which gave rise to Schoenfeld's initial discipline and U.S. Resort's purported reason for her eventual firing.

In her motion to vacate, Schoenfeld claims that she engaged in a protected activity by complaining to her employer that she was being punished for the picture incident differently

9

than the male employee. The record shows some evidence that Schoenfeld did eventually complain—prior to being terminated—that she was being punished differently because she was a woman. Although this is primarily supported by Schoenfeld's deposition testimony and her affidavit, it can also be inferred from other deposition testimony. Thus, there is a contested issue of fact of whether Schoenfeld complained about gender discrimination and then was terminated in close proximity to her complaint. However, overlooking a contested issue of fact does not mean that the arbitrator showed manifest disregard for the law. A mistake of law does not equal manifest disregard for the law.

Furthermore, the arbitrator held that even if Schoenfeld satisfied the prima facie elements, her claim still failed because U.S. Resort put forth a legitimate, non-retaliatory reason for her termination (her actions during the picture incident), and she did not come forward with sufficient evidence of pretext. Regarding the pretext issue, however, Schoenfeld asserts the arbitrator manifestly disregarded the law when he failed to take into consideration U.S. Resort's shifting justifications for her termination in determining the credibility of its non-retaliatory reason for Schoenfeld's discharge. Schoenfeld cites several cases for the proposition that a lack of consistency in explaining reasons for termination or failure to determine who made the decision to terminate may support a finding of pretext. *See Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1124 (8th Cir. 2006); *Dominguez-Cruz v. Suttle Caribe, Inc.*, 202 F.3d 424, 432 (1st Cir. 2000); *Lynn v. Deaconess Med. Ctr.-W. Campus*, 160 F.3d 484, 489 (8th Cir. 1998); *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 703 (8th Cir. 1994).

The arbitrator found that U.S. Resort's reasons for Schoenfeld's termination "included disruptive behavior, work quality issues, difference in philosophy and Claimant's participation in gossip and complaining about co-workers." Arb. Op. at 7. However, the arbitrator went on to find that those same reasons "could well explain or describe the same conduct and are not necessarily inconsistent."

The arbitrator did err in determining U.S. Resort's justifications were "not necessarily inconsistent," and thus not pretextual, because this is the type of determination, under the facts of this case, that cannot be made on summary judgment. *See Davidson v. City of Minneapolis, Minn.*, 490 F.3d 648, 658 (8th Cir. 2007) (stating that weighing evidence, assessing credibility and drawing inferences from facts are jury functions). By determining that these justifications were "*not necessarily* inconsistent," the arbitrator tacitly admitted a fact-finder could reasonably infer otherwise. *See Wallace*, 442 at 1124 ("While these factors might provide evidence of a non-retaliatory motive, a jury could reasonably infer that the Company's after-the-fact reliance on these facts is evidence that the Company is dissembling to cover up an impermissible motive."). Even so, this error is, at worst, a misapplication or misunderstanding of the law. *Schoch*, 341 F.3d at 790 (stating that court may not substitute its judgment for arbitrator's, even if court disagrees with arbitrator's legal analysis). This is not a situation where the arbitrator acknowledged that he was rendering a decision contrary to law and said he was doing so because he thought the law unfair. *See Lincoln Nat'l Life Ins. Co.*, 374 F.3d at 675. In fact, the arbitrator did not cite any cases regarding a lack of consistency being a possible basis for finding pretext, so it cannot be said he was fully aware

11

of the existence of a clearly defined governing legal principle but refused to apply it. As a result, the arbitrator's decision regarding retaliation does not evidence a manifest disregard for the law sufficient to vacate the arbitration award. *See UHC Mgmt. Co.*, 148 F.3d at 998 ("Although this result may seem draconian, the rules of law limiting judicial review of the judicial process in the arbitration context are well established . . . .").

### 3. Gender Discrimination Claim.

Next, Schoenfeld claims the arbitrator acted in manifest disregard for the law when he failed to consider her direct evidence of gender discrimination and when he improperly found no inference of discrimination under the *McDonnell Douglas* burden-shifting analysis. "[D]irect evidence is evidence 'showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated' the adverse employment action." *Carraher v. Target Crop.*, 503 F3d 714, 716 (8th Cir. 2007) (quoting *Griffith v. City of Des Moines*, 387 F.3d 733, 736 (8th Cir. 2004)). Regarding her direct discrimination claim, she has not met the burden of showing the arbitrator was conscious of the law and deliberately ignored it, rather than merely misstating, misinterpreting or misapplying the law. *See Riddle v. Wachovia Sec., LLC*, 220 Fed. App'x 453, 453 (8th Cir. 2007) (burden rests with party seeking vacatur of arbitration award); *Stark*, 381 F.3d at 802 (arbitrators are not required to elaborate on reasoning supporting award and manifest disregard "is more than a simple error in law" or failure "to understand or apply it"). The arbitrator mentioned nothing about the law regarding direct evidence of discrimination; as a result, the Court cannot say he acted

12

with manifest disregard for that law. *See Stark*, 381 F.3d at 802 ("Because '[a]rbitrators are not required to elaborate their reasoning supporting an award' . . . '[i]f they choose not to do so, it is all but impossible to determine whether they acted with manifest disregard for the law.'" (quoting *Dawahare v. Spencer*, 210 F.3d 666, 669 (6th Cir. 2000))); *see also Lincoln Nat'l Life Ins. Co.*, 374 F.3d at 675 ("[T]o allow a court to conclude that it may substitute its own judgment for the arbitrator's whenever the arbitrator chooses not to explain the award would improperly subvert the proper functioning of the arbitral process.").

In reaching his decision on whether there was circumstantial evidence of discrimination, the arbitrator found Schoenfeld failed to meet the fourth *McDonnell Douglas* prima facie element: that she was treated differently than similarly situated male employees. The arbitrator considered and rejected Schoenfeld's argument that she should be compared with Paul Wood, the other employee engaged in the picture incident, stating "the evidence fails to establish whether or not the degrees of misconduct by Wood and Claimant related to the picture incident were the same in all relevant respects." It was this absence of comparison on which the arbitrator based his legal analysis. Schoenfeld maintains she presented evidence establishing that she and Wood were similarly situated, but even in her briefing before this Court she does not state facts that would meet her burden of showing she was similarly situated to Wood in all relevant aspects. *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). "Specifically, the individual used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id*. (citing *Lynn*, 160 F.3d

13

at 487-88). The arbitrator's decision is supported by Eighth Circuit precedent; at worst, it is an erroneous legal conclusion beyond this Court's review. *See McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 876 (8th Cir. 2007) ("McGinnis does not cite to any specific examples of employees, similarly situated in all relevant respects, who received more favorable treatment."); *Lincoln Nat'l Life Ins. Co.*, 374 F.3d at 675 (arbitrator's misapplication of law is not reviewable).

In addition, Schoenfeld takes issue with the arbitrator's determination that she lied to her employer during the picture incident. Schoenfeld contends that whether she lied is irrelevant in determining whether she was similarly situated to Wood; it is relevant, however, to the extent that she has the burden of establishing she was similarly situated to Wood in *all* relevant aspects. She also claims that whether she lied was a disputed issue of material fact ignored by the arbitrator. But whether she *actually* lied is not material fact; it only matters that her employer had a good faith belief that she did. *See Euerle-Wehle v. United Parcel Serv. Inc.*, 181 F.3d 898, 900 (8th Cir. 1999) ("Whether UPS *correctly* concluded the Euerle-Wehle had committed serious violations of company policy that warranted her termination is not material because UPS acted reasonably and in good faith in its investigation."); *see also Gilooly*, 421 F.3d at 743 (Colloton, J., concurring, in part, and dissenting, in part) ("[I]t has been recognized that an employer may properly carry out a termination based on the employer's good faith belief that an employee lied in an internal investigation."). While the arbitrator erred when he concluded at the summary judgment stage that Schoenfeld lied during the investigation of the picture incident, it cannot be said that he showed manifest

14

disregard for the law or that his ultimate decision would have been any different if he had applied the correct legal analysis. *See Euerle-Wehle*, 181 F.3d at 900-01 ("Euerle-Wehle contends that UPS's discriminatory animus may be inferred because she was disciplined more harshly than and paid less than some of the male package-center managers. She has not shown, however, that the male managers she claims received more favorable treatment were similarly situated.").

    **B.**    **U.S. Resort's Motion to Confirm**

        *1.*    *The Court has jurisdiction to confirm the arbitration award.*

Having denied Schoenfeld's motion to vacate, the Court next turns to U.S. Resort's motion to confirm the arbitrator's judgment under 9 U.S.C. § 9. Schoenfeld opposes confirmation on the ground that there was no express affirmative agreement between the parties providing for confirmation of the arbitrator's award by this Court. Her principle support is *Milk Drivers, Dairy & Ice Cream Employees, Laundry & Dry Cleaning Drivers, Clerical & Allied Workers, Local Union No. 387 v. Roberts Dairy*, 294 F. Supp. 2d 1050 (S.D. Iowa 2003), which, in turn, primarily relies on *PVI, Inc. v. ratiopharm GmbH*, 135 F.3d 1252 (8th Cir. 1998), for the proposition that under the FAA, parties must expressly agree that a federal court may confirm the arbitration award.

        *a.*    *A court that has the power to stay an action also has the power to confirm the ensuing arbitration award.*

In *Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.*, 529 U.S. 193 (2000), the Supreme Court explained, "We have, however, previously held that the court with the power

to stay the action under § 3 has the further power to confirm any ensuing arbitration award." *Id*. at 202 (citing *Marine Transit Corp. v. Dreyfus*, 284 U.S. 263, 275-76 (1932)); *see also Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 686 (8th Cir. 2002) ("After it entered a stay pending arbitration under 9 U.S.C. § 3, the court had the further power to confirm any ensuing arbitration award."). Here, Magistrate Judge Knox granted U.S. Resort's request to compel arbitration and stayed the proceedings on September 19, 2006 [Doc. # 57]. Although not stated directly, the Court's citations to *Lyster v. Ryan's Family Steak Houses, Inc.*, 239 F.3d 943, 945 (8th Cir. 2001), and *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985), imply the stay was granted under section 3. Schoenfeld does not claim that the Court did not have the authority to stay the action under section 3 pending arbitration. Thus, according to *Cortez Byrd Chips*, this Court has jurisdiction to confirm under section 9.

Schoenfeld attempts to distinguish *Cortez Byrd Chips* by noting it was undisputed in that case that the arbitration agreement allowed for confirmation; instead, the issue facing the Supreme Court was *which* district court could confirm. While this is true, the Supreme Court's specific analysis regarding the interaction between section 3 and section 9 does not turn on whether the parties expressly agreed to confirmation under section 9. As the Supreme Court explained in an earlier case, "We do not conceive it to be open to question that, where the court has authority under the statute, as we find it had in this case, to make an order for arbitration, the court also has authority to confirm the award or to set it aside for irregularity, fraud, ultra vires, or other defect." *Marine Transit Corp.*, 284 U.S. at 275-76. Thus, both *Cortez Byrd Chips* and *Marine Transit Corp.* suggest that when the substantive provisions of

16

the FAA apply to an agreement, the court necessarily has the full-range of authority granted by the FAA, including both the power to stay under section 3 and the power to confirm under section 9.

> b.   A court may confirm where the parties have agreed to enforcement under the FAA.

Still, Schoenfeld maintains that according to the Eighth Circuit's decision in *PVI, Inc. v. ratiopharm GmbH*, 135 F.3d 1252—and despite *Cortez Byrd Chips* and *Marine Transit Corp.*—an arbitration cannot be confirmed unless the parties expressly agree to it. Originally, the district court in *PVI* declined to confirm the arbitration award because it found the underlying dispute resolution process was not an arbitration, and, therefore, the FAA did not apply. *See PVI v. ratiopharm GmbH*, No. 95-0899, slip op. at 9 (W.D. Mo. Apr. 2, 1997). There was no provision in the parties' agreement explicitly mentioning the FAA, let alone that it was enforceable under the FAA. Consequently, the district court never discussed whether there must be an express affirmative agreement providing for confirmation under section 9.

On appeal, the parties continued to argue about whether they had agreed to arbitration, not whether the agreement expressly allowed confirmation. *See* Brief of Appellant, *PVI, Inc. v. ratiopharm GmbH*, 135 F.3d 1252 (8th Cir. 1998) (No. 97-2192); Brief of Appellees, *PVI*, 135 F.3d 1252. However, in rendering its decision, the Eighth Circuit explained that a motion to confirm under section 9 of the FAA was not the appropriate avenue for debating whether the parties had agreed to arbitrate in the first place. *See PVI*, 135 F.3d at 1253-54. Citing to the FAA's language, the court instead held confirmation under § 9 was available only "[i]f

17

the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration." 135 F.3d at 1253. As a result, the Court of Appeals rejected other circuits which have found that the phrase "final and binding" satisfies the FAA's requirements. *See id.* at 1254. The Eighth Circuit then explained:

> Although ratiopharm asked for a remedy under state law in the district court, based on the diversity of the parties, it argues on appeal only that it was entitled to a remedy under the FAA. The fact, if it is one, that it might have some other remedy is, of course, not relevant to the question of whether it has one under the FAA. *Enforcement under the FAA brings all of the substantive provisions of the act to bear on the arbitration and award in dispute.* An action under state law, on the other hand, might involve the application of different kinds of substantive rules and defenses. It is clear to us that Congress intended for the substantive provisions of the FAA to apply only when the parties affirmatively agreed that they should.

*Id.* (emphasis added). Because the parties had not expressly agreed to enforcement under the FAA, the district court had no jurisdiction to confirm

Viewing the Eighth Circuit's opinion in this context, *PVI* is in complete alignment with *Cortez Byrd Chips* and *Marine Transit Corp*. As the Eighth Circuit explained, "Congress intended for the substantive provisions of the FAA to apply only when the parties affirmatively agreed that they should." *Id*. Thus, *PVI* holds that parties must agree to enforcement under the FAA; it does not mean that confirmation must be expressly agreed to apart from an agreement to arbitrate under the FAA, which could prevent a court from confirming an arbitration award under section 9 even though it had the power to stay under section 3. Reading *PVI* otherwise, as Schoenfeld urges, would render nonsensical the Eighth Circuit's holding that "the mere inclusion of the phrase 'final and binding' in an agreement

18

to arbitrate" does not "make[] the award enforceable under the FAA." *Id.* It would also put *PVI* in conflict with *Cortez Byrd Chips*, which the Eight Circuit almost certainly did not intend to do.

In the present case, the same section of the parties' agreement that was the basis for compelling arbitration states: "This Agreement is intended to be *enforceable* under the *Federal Arbitration Act*." (emphasis added). This express language confirms that the parties affirmatively agreed that the substantive provisions of the FAA applied and that a resulting arbitration decision was *enforceable*, and therefore confirmable, under the FAA. It is also remarkably different than the agreement language at issue in *PVI*, which stated that the determination of an expert would be "final, binding, and conclusive" but did not mention the FAA. *Id.* at 1253. The holding of *PVI* is that the parties must expressly agree to be bound by the substantive provisions of the FAA, which Schoenfeld and Defendants have done. *See id.* at 1254 ("But we do not agree that the mere inclusion of the phrase 'final and binding' in an agreement to arbitrate makes the award *enforceable under the FAA*." (emphasis added)). Because the parties expressly agreed that the arbitration would be "enforceable under the Federal Arbitration Act," and also because the court had the authority under section 3 to stay the proceedings, this Court has jurisdiction to confirm the arbitrator's award under section 9 of the FAA.

### 2. *The Court confirms the arbitration award.*

In confirming an arbitration award, "[t]he court's sole function is to decide whether the arbitrators' decision draws its essence from the contract." *Executive Life Ins. Co. of N.Y. v.*

Case 2:05-cv-04368-NKL   Document 147   Filed 01/03/08   Page 19 of 21

*Alexander Ins. Ltd.*, 999 F.2d 318, 320 (8ᵗʰ Cir. 1993). A review of an arbitration award generally involves two inquiries: "(1) Did the parties agree to arbitrate? and (2) Did the arbitrator have the power to make the award that he made?" *Trailmobile Trailer, LLC v. Int'l Union of Elec., Elec., Salaried, Mach. & Furniture Works, AFL-CIO*, 223 F.3d 744, 746 (8ᵗʰ Cir. 2000) (citing *Keebler Co. v. Milk Drivers & Dairy Employees Union, Local No. 471*, 80 F.3d 284, 287 (8ᵗʰ Cir. 1996)). Thus, the only issue left for the Court to resolve is whether the arbitrator had the power to make the award.

This Court's review of a final arbitration decision is extremely narrow. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Id*. (quoting *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). Courts will vacate an arbitration award under very limited circumstances, such as it exceeds the arbitrator's power or it fails to "draw its essence" from the contract between the parties. *See id*. at 747 (citing 9 U.S.C. § 10(a)(4); *Osceola County Rural Water Sys., Inc. v. Subsurfco, Inc.*, 914 F.2d 1072, 1075 (8ᵗʰ Cir. 1990)). "An arbitrator's award draws its essence from the [parties' agreement] as long as it is derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." *Stark*, 381 F.3d at 799 (quoting *Johnson Controls, Inc. Sys. & Servs. Div. v. United Ass'n of Journeymen*, 39 F.3d 821, 825 (7ᵗʰ Cir. 1994)).

Here, as already explained, there is no indication that the arbitrator exceeded his authority by finding in favor of U.S. Resort. The arbitration agreement covers legal disputes

20

regarding Schoenfeld's employment and termination from employment. Further, on the face of the arbitration order, and in conjunction with the grounds for vacatur under the FAA, the Court believes that the arbitrator was construing or applying the contract and acting within the scope of his authority, and that his award draws its essence from the contract between the parties. *See also* 9 U.S.C. § 10 (outlining grounds for vacating arbitration award); *Stark*, 381 F.3d at 802 ("Our disagreement with an arbitrator's interpretation of the law or determination of the facts is an insufficient basis for setting aside his award."). Therefore, the Court confirms the arbitrator's award in favor of U.S. Resort.

## III.  Conclusion

Accordingly, it is hereby

ORDERED that Plaintiff Amanda Schoenfeld's Motion to Vacate [Doc. # 139] is DENIED.  It is further

ORDERED that Defendant U.S. Resort Management, Inc's Motion to Confirm Judgment [Doc. # 123] and Second Motion to Confirm Judgment [Doc. # 138] are GRANTED.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: January 3, 2008
Jefferson City, Missouri